UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ELSIE BECK GLICKERT, et al. | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | No. 4:13cv2170 SNLJ |
| THE LOOP TROLLEY TRANSPORTATION DEVELOPMENT DISTRICT, et al. | ) | |
| Defendants | ) | |

## MEMORANDUM

Plaintiffs filed a five-count complaint against seventeen defendants related to the formation of the Loop Trolley Transportation Development District (the "District") in St. Louis County, Missouri. Several defendants have been dismissed, and the following defendants remain: the District, a member of its Board of Directors (John Nations, in his capacity as a member of that Board), the Loop Trolley Company ("Company"), the City of St. Louis, University City, the Catlin Tract Board of Trustees ("Catlin Corporation"), two members of the Catlin Tract Subdivision Board of Trustees (John Daniel and Sean Gannon, in their capacity as Board members), and one purported Trustee of the Catlin Tract Subdivision Board of Trustees (Anne S. Carlson, in her capacity as a purported Board member).

Presently before the Court are several Motions to Dismiss, a Motion for Summary

Judgment, and a Motion to Strike. After an extended briefing schedule, the motions are now ripe for disposition.

## I. Background

At the heart of this matter is the formation of the Loop Trolley Transportation Development District (the "District"). A "transportation development district" is a creature of statute, the Transportation Development District Act, § 238.205 *et seq.* RSMo ("TDD Act"). A transportation development district may be "created to fund, promote, plan, design, construct, improve, maintain, and operate one or more projects or to assist in such activity." § 238.205 RSMo. Such districts are considered political subdivisions of the state. *Id.* The statute outlines procedures for creation of transportation development districts, which involves filing a petition with a circuit court of any county partially or totally within the proposed district. § 238.207 RSMo.

In the case of the District at issue here, University City filed such a petition with the Circuit Court of St. Louis County in accordance with § 237.207.2 RSMo in August 2007 (the "Formation Lawsuit" or "Formation Petition"). University City is a municipal corporation and political subdivision of Missouri located within St. Louis County, and it is also "local transportation authority" under § 238.202.1(4) RSMo. The project University City had in mind was the development of a trolley-car system from the Delmar Loop in University City to Forest Park in the City of St. Louis, funded in part by the levy of a retail sales tax within the District's geographical boundaries. The petition named as respondents

the Missouri Highways and Transportation Commission, the City of St. Louis, and the County of St. Louis, among others. In accordance with the TDD Act, the Petition requested that the question of whether to establish the District be submitted to qualified voters within the District limits.

Under the TDD Act — which governed the process by which the parties and the Court proceeded — such a petition is served on the respondents, and the court also publishes notice of the Formation Petition once a week for four consecutive weeks through publication in area newspapers. § 238.212 RSMo. Respondents to the petition could oppose the petition and seek a declaratory judgment from the circuit court that the proposed district is illegal or unconstitutional. § 238.210.1 RSMo. In addition, "[a]ny resident, taxpayer, any other entity, or any local transportation authority within the proposed district may join in or file a petition supporting or answer opposing the creation of the district and seeking a declaratory judgment respecting these same issues within thirty days after the date notice is last published by the circuit court." *Id.*

The TDD Act supplies the language of the ballot question to be posed to voters and other election procedures. §§ 238.215-6 RSMo. At the time of the Formation Petition at issue here, "qualified voters" included both registered voters residing in the proposed district and property owners.[1] Registered voters received one vote each, and property

---

[1] In 2008, the definition of "qualified voters" set forth in the TDD Act was amended such that property owners are designated qualified voters only if there are no registered voters residing in the district. That new definition of qualified voters remains the current state of the law at this time.

owners received one vote per acre. *Id*.

On December 18, 2007, after no opposition to the Formation Petition had been filed, the circuit court ordered that the mail-in election occur. On May 14, 2008, the election judges transmitted to the circuit court the certified results of the mail-in election, in which 38.097 votes were cast in favor and 0.88 votes were cast against the formation of the District. On July 1, 2008, the Circuit Court entered a final judgment that the "Loop Trolley District and the method of funding are neither illegal nor unconstitutional." That "TDD Judgment" established the District as a political subdivision in accordance with the Act and approved the sales tax and funding of the District through imposition of the tax. The sales tax was imposed and has been collected since August 7, 2008.

A portion of the Loop Trolley's planned route traverses a part of Lindell Boulevard known as the South Strip, which is located in a private subdivision known as the Catlin Tract. That subdivision was created and is governed by an indenture of trust dated December 19, 1908 ("Indenture"). On December 6, 1909, the Trustees of the Catlin Tract Subdivision ("Trustees") deeded the South Strip to the City of St. Louis with a restriction against building a railroad or street railway on the South Strip. On January 7, 2013, the trustees of the Catlin Subdivision held a meeting, and one Trustee called for a vote of the homeowners on the question of whether the Trustees should be authorized to waive the Indenture's restrictions to allow the Loop Trolley District to build and operate a streetcar across Lindell Boulevard. Sometime after the vote on January 7, 2013, that Trustee

announced that the homeowners had voted to waive the aforesaid indenture restriction. The "Catlin Tract Waiver" was recorded with the City of St. Louis on January 29, 2013, granting the Loop Trolley District a waiver to construct and operate the trolley on the South Strip.

Plaintiffs are four individuals. None of the four plaintiffs resides within the District, but one (Peter Sarandos) owns property in the District. Another plaintiff resides in the Catlin Subdivision. Together, the four plaintiffs brought a five-count complaint pertaining to the formation and development of the Loop Trolley District. Remaining defendants include the District, board member John Nations, the City of St. Louis, University City, the Catlin Tract Board of Trustees ("Catlin Corporation"), two members of the Catlin Tract Subdivision Board of Trustees (John Daniel and Sean Gannon), and one purported Trustee of the Catlin Tract Subdivision Board of Trustees (Anne S. Carlson). Each of the five counts seeks a declaratory judgment and permanent injunction.

- **Count I** seeks a finding that the TDD Act's voting and balloting provisions are, on their face or as applied, unconstitutional and thus that the judgment creating the District is void. Plaintiffs' claims are made under both the Missouri and United States Constitutions.

- **Count II** seeks a finding that the judgment creating the District is invalid due to the defendant cities' failure to enact ordinances, irregular balloting issues, and the failure of the court clerk to effect public notice. This Count

is based upon state law claims and is brought under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

- **Count III** seeks a holding that the District cannot construct its system outside the District's geographical boundaries. This Count is based upon state law claims and is brought under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

- **Count IV** asserts that the Catlin Tract Waiver provided by the Trustees is invalid and seeks to prohibit construction of the trolley across the Subdivision land. This Count is based upon state law claims and is brought under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

- **Count V** alleges that the various defendants lack conditional use permits from the City of St. Louis and University City to build and operate the trolley system. This Count is based upon state law claims and is brought under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

Numerous dispositive motions and voluminous memoranda for and against the motions have been filed. They are ripe for disposition. However, because the Court holds that the Loop Trolley District prevails in its motion to dispose of Count I, and the Court will dismiss the remaining counts as described below, the Court need not reach the remaining motions.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction over the claim. The standards applied to a Rule 12(b)(1) motion to dismiss are the same as those that apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Vankempen v. McDonnell Douglas Corp.*, 923 F. Supp. 146, 147 (E.D.Mo.1996) (citing *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir.1980)).

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor

of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962).

**III. Discussion**

Plaintiffs seek relief in Counts I under both the United States and Missouri Constitutions. The remaining four Counts are state law claims brought pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367. Because this Court holds that plaintiffs Elsie Beck Glickert, Jen Rivenes Jensen, and Irene Franklin lack standing to bring their federal claims, those claims are dismissed. As for plaintiff Peter Sarandos, his claims are barred by the TDD Judgment. Because this Court declines to exercise its jurisdiction over the remaining state law claims, all remaining claims will be dismissed as well.

**A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Plaintiffs' Count I attacks the TDD Act and Judgment as unconstitutional, and they seek a declaration that the District does not exist. Article III of the United States Constitution limits federal judicial power to "cases or controversies," and that power exists only to redress or otherwise protect against injury to the complaining party. *Warth v.*

*Seldin*, 422 U.S. 490, 499 (1975). The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth*, 422 U.S. at 498.

First, "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

In addition to Article III standing, plaintiffs must also establish prudential standing that is designed to ensure that the role of federal courts is properly limited. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). For instance, standing may be denied where the plaintiff asserts a generalized harm shared by a large class of citizens or where the plaintiff's claims rest on the legal rights or interests of third parties. *Warth*, 422 U.S. at 499.

In determining whether plaintiffs have established standing, the Court assumes the facts stated in the Complaint to be true and construes the Complaint liberally in the light most favorable to the Plaintiffs. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 933-34 n. 4 & 5 (8th Cir. 2012). Nevertheless, it is still necessary to include some "'well-pleaded factual allegations'" to support the claim. *Id.*

Three of the four plaintiffs are residents of St. Louis and University City. The fourth plaintiff, Peter Sarandos, lives in St. Charles County and owns property in the District.

First, plaintiffs suggest they have standing to bring these claims as taxpayers. However, the sales tax is not imposed on plaintiffs; it is imposed on sellers. The TDD Judgment provides that "[t]he District shall be funded through the imposition of the Sales Tax pursuant to Section 238.235 of the Act." Section 238.235.2 reads, in relevant part, "[t]he resolution imposing the sales tax pursuant to this section shall impose *upon all sellers* a tax for the privilege of engaging in the business of selling tangible personal property or rendering taxable services at retail to the extent and in the manner provided in sections 144.010 to 144.525." § 238.235(2) RSMo (emphasis added).

Plaintiffs claim they nonetheless bear the burden of the tax, but that argument has been rejected by the Missouri Supreme Court: the "fact that the purchaser bears the economic burden of the sales tax does not alter the statutory scheme which imposes the sales tax on sellers." *Centerre Bank of Crane v. Dir. of Revenue*, 744 S.W.2d 754, 759 (Mo. banc 1988). Although not stated in the context of standing issues, the Missouri Supreme Court could not be more clear: " the seller is the taxpayer for purposes of our sales tax law." *Id.* at 760. In addition, even if the Court accepted their "pass-through" taxpayer status, plaintiffs' decision to shop in the District and thus pay taxes is entirely voluntary. *See In re Clarkson Kehrs Mill Transp. Dev. Dist.*, 308 S.W.3d 748, 754 (Mo.

App. E.D. 2010) (observing that "[m]ovants will only have to pay the Sales Tax if they choose to utilize the improvements to access the development of which they complain" and holding that, as a result, they did "not have an interest constituting a direct and immediate claim to the subject of the underlying action" to justify intervention in the TDD proceedings as a matter of right). The mere fact that plaintiffs may choose to shop in the District does not grant them taxpayer standing. *See also, e.g.*, *Winter Bros. Underground Inc. v. City of Beresford*, 652 N.W.2d 99, 105 (S.D. 2002) (rejecting taxpayer standing argument based on payment of sales tax).

Next, plaintiffs allege that they are patrons of the District businesses and that they are pedestrians and motorists within the District and along the proposed trolley route, thus they will be affected by the Loop Trolley. However, prudential standing considerations prohibit federal courts from exercising jurisdiction over litigation of "a generalized grievance shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499. Grievances such as plaintiffs' — which amount to perceived inconveniences which will be shared by the general public — are within the purview of the political process and not the courts. *United States v. Richardson*, 418 U.S. 166, 179 (1974).

Plaintiffs say that they are proximate to the Trolley route, so, like the *Friends* environmental plaintiffs, plaintiffs contend their harm is special and sufficient to allow for standing. But in *Friends*, standing was made available by a statute that conferred standing

-11-

to any person "having an interest which is or may be adversely affected" to bring suit to enjoin pollution. *Friends of the Earth*, 528 U.S. at 173 (quoting 33 U.S.C. §§ 1365(a), (g)). Those environmental plaintiffs — and others suing under a statute — need not meet prudential standing requirements because Congress may eliminate such requirements through legislation. *Defenders of Wildlife, Friends of Animals & Their Env't v. Hodel*, 851 F.2d 1035, 1039 (8th Cir. 1988). Plaintiffs here, on the other hand, rely on no such statute, and their generalized grievances pertaining to traffic, pedestrian flow, or general distaste for the Trolley project are grievances within the purview of the political process. *See Richardson*, 418 U.S. at 179; *see also Warth*, 422 U.S. at 499.

Plaintiffs Sarandos stands, however, in somewhat different shoes. He is the only one of the four plaintiffs who owns property within the District. Although such a status may provide him with standing in this case, the Court need not address it because his claims fail for a separate reason, discussed below.

### B. Summary Judgment: The TDD Judgment Bars Sarandos's Claim

It is undisputed that the Circuit Court of St. Louis County entered the TDD Judgment establishing the District on July 1, 2008. This Court must give the same preclusive effect to the state court judgment that it would be given in the courts of Missouri. 28 U.S.C. § 1738. Missouri law is clear that the judgment establishing a transportation development district is final and given preclusive effect over those who could have intervened in the Formation Litigation. *KCAF Investors, L.L.C. v. Kansas City*

*Downtown Streetcar Transp. Dev. Dist.*, 414 S.W.3d 470, 483 (Mo. App. W.D. 2013), reh'g and/or transfer denied (Oct. 1, 2013), transfer denied (Dec. 24, 2013).

*KCAF Investors* is precisely on point against plaintiff Sarandos, who owned property in the District and in fact took part in the vote regarding the District's establishment. In that case, a group of property owners filed a lawsuit in Missouri state court that challenged the creation of a district created for the purpose of operating a street car system in Kansas City. The state court held that the property owners were barred from bringing their suit after the Jackson County Circuit Court had entered a final order approving the district, the imposition of a sales tax, and imposition of a real property assessment. *KCAF Investors*, 414 S.W.3d at 483. The court relied on § 238.210.1 RSMo, which states "[a]ny resident, taxpayer, any other entity, or any local transportation authority within the proposed district may join in or file a petition supporting or answer opposing the creation of the district and seeking a declaratory judgment respecting these same issues within thirty days after the date notice is last published by the circuit court." Pursuant to that section, then, and in accordance with the requirement that the Court publish notice of the proposed District for four weeks, § 238.212 RSMo, the court held that the property owners were required to voice their objections in the formation lawsuit, and not through separate litigation. 414 S.W.3d at 483.

The court observed that "the Act's structure and wording clearly indicate that the legislature intended that the circuit court's ruling on the legality of the proposed

transportation development district, and its funding mechanisms, would be definitive, and that any person or entity objecting to the proposed district would voice their objections during the formation litigation itself." *Id*. That is, to the extent an affected party had — as plaintiff Sarandos has here — "threshold objections to the legality or constitutionality of the proposed district or funding mechanisms," such "affected parties have an obligation to intervene in the formation litigation" or else face a bar from later raising those claims separately. *Id*.

Here, plaintiffs admit that plaintiff Sarandos could have intervened in the Formation Litigation (#91 at 20), and he is thus barred from bringing his claims in Count I. *See KCAF Investors*, 414 S.W.3d at 483.[2]

The Court also notes that, although neither party raised this matter in the briefing, plaintiff Sarandos makes both facial and as-applied challenges to the TDD Act. To the extent Sarandos could not have objected to the balloting procedures until after the time to intervene under § 328.210.1 RSMo had passed, Sarandos is still barred from bringing his claim because the TDD statute required him to bring an election contest under Chapter 115 RSMo. § 238.216.5 RSMo. Indeed, in *KCAF Investors*, the trial court held that the property owners' challenges were in fact "election contests" which were untimely under § 115.577 RSMo. 414 S.W.3d at 473. Plaintiff Sarandos similarly should have brought all

---

[2]The District argues that all four plaintiffs are barred from bringing claims because they should have intervened in the Formation Lawsuit in accordance with § 238.210.1. The Court need not reach that argument, however, because it has already held that plaintiffs Glickert, Jensen, and Franklin lack standing to bring their federal claims.

of his claims either as an intervener in the Formation Lawsuit, or, perhaps, through an election contest under Chapter 115 RSMo. Those were his sole remedies, and he is barred from making those claims here as a result.

### C. Remaining State Law Claims

Plaintiffs have no standing or are barred from bringing their lawsuit as to Count I, which leaves the Court with Counts II through V. All four of those counts are state law claims brought under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Having disposed of the federal claims on which those four counts depend for jurisdiction, the Court will dismiss those remaining claims pursuant to 28 U.S.C. § 1367(c)(3). *See, e.g.*, *Ventimiglia v. AT&T Yellow Pages*, 543 F. Supp. 2d 1038, 1045 (E.D. Mo. 2008).

### IV. Conclusion

Defendant Loop Trolley TDD's motion to dismiss and for summary judgment (#44) will be granted in a separate order. Motions filed by the remaining defendants will be denied as moot.

Dated this __28th__ day of April, 2014.

                                                  STEPHEN N. LIMBAUGH, JR.
                                                UNITED STATES DISTRICT JUDGE